## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

PAUL M. MILLER,                          :

               Plaintiff          :     CIVIL ACTION NO. 3:23-CV-1165

               **v.**                  :          (Judge MANNION)

BRETT OSAUSKI, *et al.*,                  :

               Defendants        :

### <u>MEMORANDUM</u>

Presently before the court in this prisoner civil rights case are defendants' motions to dismiss plaintiff's complaint, plaintiff's motion for preliminary injunction, defendants' motion to stay discovery, defendants' motion for sanctions, and plaintiff's motion to compel discovery. For the reasons set forth below, the court will grant the motions to dismiss, dismiss the claims against defendant Knecht with prejudice, dismiss the claims against defendants Osauski, Nye, and Burns without prejudice, grant plaintiff leave to amend his claims against Osauski, Nye, and Burns, deny plaintiff's motion for preliminary injunction, grant defendants' motion to stay discovery, deny plaintiff's motion to compel discovery as moot, and deny defendants' motion for sanctions without prejudice.

## I.   BACKGROUND

Plaintiff, Paul M. Miller, who is currently incarcerated in Columbia County Prison, brings the instant case pursuant to 42 U.S.C. §1983 alleging violations of his civil rights by a correctional officer in Columbia County Prison, the warden and deputy warden in the prison, and a magisterial district judge in Columbia County. Miller filed his complaint on July 7, 2023, and the court received and docketed it on July 13, 2023. (Doc. 1 at 10).

According to the allegations in the complaint, Miller asked defendant Osauski, a correctional officer in the prison, to contact a nurse so that he could receive treatment for a "tooth problem" he was experiencing on March 26, 2021. (*Id.* at 4). Osauski allegedly responding by "calling [Miller] names." (*Id.* at 4). Osauski then purportedly handcuffed Miller, followed him out of the cell, and assaulted him in the prison's dayroom. (*Id.*) During the assault, Osauski allegedly grabbed Miller by the throat and struck Miller on the side of his face. (*Id.*) Osauski then allegedly tried "to wrap up [Miller's] legs in attempts to slam [him] down." (*Id.*) Other correctional officers allegedly observed this incident. (*Id.*) Officer Moser, who is not named as a defendant, purportedly held Miller up by the handcuffs. (*Id.*)

Miller was allegedly placed in the prison's restricted housing unit ("RHU") after this incident and was not given any pain medication until the

following morning. (*Id.*) Miller was found not guilty of misconduct, but he remained in the RHU. (*Id.*) Defendant Nye, the prison's warden, allegedly told Miller that his phone calls were being monitored while he was in the RHU. (*Id.*) Nye also allegedly obstructed Miller's ability to file grievances by not providing grievance forms to him and by improperly responding to the grievances he filed. (*Id.* at 5). Miller alleges that he was subjected to two "targeted cell searches" in which paperwork was removed from his cell while he was in the RHU. (*Id.*)

The complaint alleges that "nurse Kaitlyn"—who is not named as a defendant—gave Miller a "5 pill cocktail of another inmate['s] medication." (*Id.*) Miller was also purportedly given medication to which he was allergic. (*Id.*) The complaint alleges that "they" delayed giving Miller medication for his "tooth infection," before "giving [him] medication for it finally but with no real intentions of fixing the problem because there was no dentist here at the time." (*Id.*)

On April 9, 2021, Miller allegedly had an extradition hearing in the Bloomsburg County Court of Common Pleas to determine whether he should be extradited to Alabama to face prosecution for charges pending in that state. (*Id.*) Defendant Knecht, a magisterial district judge in the county, purportedly presided over the hearing. (*Id.*) Knecht allegedly came down

3

from his bench and sat across from Miller, at which point he slid him a piece of paper and said "this is so you can take care of your Alabama affairs." (*Id.*) Miller's bond for his pending Columbia County charges was purportedly lowered from $250,000 to unsecured shortly after this hearing. (*Id.*)

When Miller returned to Columbia County Prison after the hearing, he noticed that all of his belongings, except for "some other paperwork" had been packed up. (*Id.*) Prison officials then transferred him to a facility in Montour County to await his extradition to Alabama. (*Id.*)

Miller continued to experience tooth pain after his transfer to Montour County. (*Id.*) An unnamed doctor in the prison spoke with Miller. (*Id.*) Miller asked for more pain medication, but rather than giving him more, the doctor purportedly lowered his prescribed dose. (*Id.* at 5-6). Miller woke up "in even more pain" the next day. (*Id.* at 6). Miller was scheduled for a hearing in one of his legal proceedings later that day. (*Id.*) He purportedly told a correctional officer that everyone in the hearing would see "his condition and know why." (*Id.*) The hearing was then "coincidentally continued." (*Id.*)

Officials in Montour County purportedly transported him to Geisinger Medical Center in Danville, Pennsylvania for medical treatment. (*Id.*) The doctor purportedly diagnosed his condition as a "problematic tooth." (*Id.*) The doctor purportedly expressed disbelief that another doctor had lowered his

4

pain medication and then prescribed additional pain medication, lemon drops, and a soft food diet. (*Id.*) The complaint alleges that Miller never received the lemon drops or the soft food diet as prescribed. (*Id.*) The doctor advised Miller to keep a warm compress on his throat and return if his condition did not improve within a week. (*Id.*) The swelling in Miller's mouth and throat allegedly began to subside approximately four or five days after he spoke with the doctor. (*Id.*)

On April 29, 2021, Miller's family and friends contacted Montour County and stated that the 14-day timeline for Miller to be extradited had expired and that the county therefore needed to release him. (*Id.*) A private extradition agent named "Oliver" then allegedly came to the prison that day and gave Miller a ride to the airport. (*Id.*) Oliver purportedly asked Miller why he was being extradited given how many pending charges he had in Pennsylvania. (*Id.*) Miller explained the circumstances and Oliver allegedly responded, "Oh I see, yeah, I think PA is done with you." (*Id.*)

Upon his extradition to Alabama, officials in that state allegedly asked Miller, "What are you even doing here rite [sic] now?" (*Id.*) Miller responded, "What do you mean?" (*Id.*) The officials then stated, "We wanted you but not until PA was done with you." (*Id.*) Miller was then released on July 2, 2021,

after Alabama gave Pennsylvania officials seven days to come get him and the Pennsylvania officials declined to do so. (*Id.*)

On July 9, 2021, Miller was scheduled for a hearing in Pennsylvania. (*Id.*) He was not aware of the hearing because he was in Alabama but his legal documents had not been sent to him there. (*Id.*) The court in Pennsylvania allegedly held Miller's failure to appear for the hearing against him. (*Id.* at 7). Based on this failure to appear, officials in Luzerne County, Pennsylvania allegedly arrested Miller on July 29, 2021. (*Id.*)

On May 9, 2023, Miller was allegedly "back in Columbia Co. Prison." (*Id.*)[1] The lack of medical and dental care allegedly continued. (*Id.*) Miller began filing grievances about his treatment on June 2, 2023. (*Id.*) After two weeks of not receiving responses, he contacted the county commissioners' office. (*Id.*) Defendant Burns, the prison's deputy warden, then contacted Miller on June 21, 2023, and stated that the grievances had been "lost." (*Id.*) Miller resubmitted the grievances, received responses to "most of them," and then appealed the rulings. (*Id.*) On June 27, 2023, defendant Nye allegedly spoke with Miller "about these issues," but did not offer any "resolutions." (*Id.*)

---

[1] The complaint does not state how Miller came to be back in the prison.

6

On July 2, 2023, "the nurse" allegedly prescribed Miller medication, which he believed was to treat his tooth. (*Id.*) Miller subsequently learned, however, that the medications were to treat "stomach issues and allergies." (*Id.*) The complaint alleges that Miller had not complained of these issues or requested any medication for them. (*Id.*)

On July 5, 2023, Miller spoke with defendant Burns and told him that he had not received grievance forms or responses to his grievances. (*Id.*) Burns purportedly stated that he was not obligated to provide the forms or respond to the grievances. (*Id.*) Moments later, a nurse came to the cell to get a photograph of a "lump" in Miller's mouth that was purportedly caused by a dentist sticking a needle too far and too hard into Miller's mouth about a month earlier. (*Id.* at 8). After the nurse photographed the lump, she returned him to the area where he had been speaking with Burns. (*Id.*) Burns and another official, Lieutenant McCabe, purportedly asked Miller "what [his] problem was" and then threatened to transfer him to another institution if he did not "chill out." (*Id.*) Miller stated that all he wanted was to have his grievances returned. (*Id.*) Officials, however, continued to not return his grievances after this conversation. (*Id.*)

The complaint names Osauski, Nye, Burns, and Knecht as defendants. (*Id.* at 3). Miller asserts claims for violations of his First, Eighth, and

Fourteenth amendment rights. (*Id.* at 9). Miller filed a motion for preliminary injunction on August 10, 2023. (Doc. 11).

Burns, Nye, and Osauski moved to dismiss the complaint on September 27, 2023, and moved to stay discovery pending resolution of the motion on the same day. (Docs. 20, 22). Knecht moved to dismiss the complaint on October 6, 2023. (Doc. 25). Briefing on the motions to dismiss is complete and they are ripe for review. (Docs. 21, 26-27, 34, 35, 38.)

On November 27, 2023, Burns, Nye, and Osauski moved for sanctions based on Miller allegedly instructing his family and friends to deposit money in other inmates' accounts rather than his own to circumvent his duty to pay the filing fee in this matter. (Doc. 44). Miller then filed a motion to compel discovery on January 22, 2024. (Doc. 57). Miller has additionally filed numerous pieces of evidence that are purportedly relevant to this case. (*See* Docs. 61-66, 68-74). All pending motions are ripe for the court's review.

## II.   STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) authorizes dismissal of a complaint for "failure to state a claim upon which relief may be granted." Under Rule 12(b)(6), we must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be

entitled to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009 (quoting *Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008)). While a complaint need only contain "a short and plain statement of the claim, Fed. R. Civ. P. 8(a)(2), and detailed factual allegations are not required, *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) (quoting *Twombly*, 550 U.S. at 556). "[L]abels and conclusions" are not enough, *Twombly*, 550 U.S. at 555, and a court "is not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* (quotations omitted).

In resolving a motion to dismiss, we thus "conduct a two-part analysis." *Fowler*, 578 F.3d at 210. First, we separate the factual elements from the legal elements and disregard the legal conclusions. *Id.* at 210-11. Second, we "determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a plausible claim for relief." *Id.* at 211 (quotations omitted).

Courts must liberally construe complaints brought by *pro se* litigants. *Sause v. Bauer*, 585 U.S. 957, 960 (2018). *Pro se* complaints, "however

inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

## III.   DISCUSSION

### A.   Section 1983

Section 1983 authorizes redress for violations of constitutional rights and provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. §1983. Thus, to establish a successful claim under Section 1983, a plaintiff must demonstrate that the challenged conduct was committed by a person acting under color of state law and deprived the plaintiff of rights, privileges, or immunities secured by the Constitution or laws of the United States. *Lake v. Arnold*, 112 F.3d 682, 689 (3d Cir. 1997). By its terms, Section 1983 does not create a substantive right, but merely provides a method for vindicating federal rights conferred by the United States Constitution and the federal statutes that it describes. *Baker v. McCollan*, 443 U.S. 137 (1979).

10

The court will begin its analysis by addressing the scope of what may be considered in resolving the motions to dismiss. The court will then address defendants' arguments for dismissal. Finally, the court will address the motion for preliminary injunction, motion to stay discovery, motion to compel discovery, and motion for sanctions in order to globally resolve all matters currently pending before the court.

## B.    Matters Considered on Motions to Dismiss

At the outset, the court notes that the numerous exhibits, declarations, and other evidence Miller has filed may not be considered in resolving defendants' motions to dismiss. (*See, e.g.*, Docs. 31, 39-40, 46, 48-50, 61-66, 68-74). "In deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) (citing *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993)). The numerous evidentiary items Miller has filed do not fit into any of these categories and accordingly will not be considered in resolving defendants' motions to dismiss.

Moreover, to the extent Miller has attempted to amend his complaint by alleging additional facts in briefs opposing the motions to dismiss, these

11

additional allegations are not considered as part of the dismissal analysis. Complaints may not be amended by briefs opposing motions to dismiss. *Gov't Emp. Ins. Co. v. Mt. Prospect Chiropractic Ctr., P.A.*, 98 F.4th 463, 472 (3d Cir. 2024) (citing *Pa. ex. rel. Zimmerman v. PepsiCo., Inc.*, 836 F.2d 173, 181 (3d Cir. 1988)).

### C.   Knecht Is Entitled to Judicial Immunity

Turning to the merits of defendants' motions to dismiss, the court first considers Miller's claims against defendant Knecht. Judicial officers are entitled to absolute immunity from suit for any claims based on their judicial acts. *Azubuko v. Royal*, 443 F.3d 302, 303 (3d Cir. 2006) (citing *Mireles v. Waco*, 502 U.S. 9, 12 (1991)). "A judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in the 'clear absence of all jurisdiction.'" *Id.* (quoting *Stump v Sparkman*, 435 U.S. 349, 356-57 (3d Cir. 1978)). Magisterial district judges in Pennsylvania are judicial officers who are entitled to the protections of absolute immunity for their judicial acts. *See, e.g.*, *Brown v. Friel*, 842 F. App'x 792, 794 (3d Cir. 2021); *Malcomb v. Dietz*, 487 F. App'x 683, 685 (3d Cir. 2012); *Surine v. Edgcomb*, 479 F. App'x 405, 407 (3d Cir. 2012).

Miller's claims against Knecht are based on his decision to adjust the amount of Miller's bond and the fact that he presided over an extradition hearing. Knecht is entitled to absolute immunity for these judicial acts. The court will accordingly dismiss the claims against Knecht with prejudice.

**D.    The Claim Against Osauski Is Untimely**

The court next considers the claim against Osauski, which the court construes as a claim that Osauski committed excessive force in violation of Miller's constitutional rights. Osauski argues this claim should be dismissed as untimely. (Doc. 21 at 3).

Civil rights claims arising from conduct that occurred in Pennsylvania are subject to Pennsylvania's two-year statute of limitations for personal injury actions. *Moore v. Walton*, 96 F.4th 616, 622 (3d Cir. 2024). The untimeliness of a claim may be asserted in a motion to dismiss if the untimeliness is apparent on the face of the complaint. *Wisniewski v. Fisher*, 857 F.3d 152, 157 (3d Cir. 2017).

It is apparent from the face of Miller's complaint that his claim against Osauski is untimely. The complaint alleges that Osauski committed

excessive force on March 26, 2021, but Miller did not file his complaint until July 7, 2023.[2] (*See* Doc. 1).

Miller advances three arguments to the contrary as to why his claim should be deemed timely. First, he argues that the limitations period should be equitably tolled because he spoke with an attorney beginning in April 2021, who purportedly stated that he was interested in representing Miller, but did not ultimately do so, which delayed Miller's filing of the case. (Doc. 27 at 4). Second, he argues that the claim should be deemed timely because it did not accrue until a date that was within the limitations period for a July 7, 2023 complaint. (*Id.*) Third, he argues that the claim should be deemed timely under the continuing violations doctrine. (*Id.*)

Miller's arguments regarding the date his claim accrued and the continuing violations doctrine are meritless. A Section 1983 civil rights claim "accrues, and the statute of limitations begins to run, 'when the plaintiff knew or should have known of the injury upon which its action is based.'" *Kach v. Hose*, 589 F.3d 626, 634 (3d Cir. 2009) (quoting *Sameric Corp. v. City of Philadelphia*, 142 F.3d 582, 599 (3d Cir. 1998)). Here, Miller clearly knew of

---

[2] The complaint is deemed filed on the date it was submitted to prison officials for mailing pursuant to the prisoner mailbox rule. *Pabon v. Mahanoy*, 654 F.3d 385, 391 n.8 (3d Cir. 2011).

his injuries on the date he was allegedly assaulted by Osauski, March 26, 2021, so his claim cannot be deemed timely based on a later accrual date.

Similarly, the continuing violations doctrine allows claims to be deemed timely only when unlawful acts have continued into the limitations period; the fact that harms from the allegedly unlawful acts have continued into the limitations period is not sufficient to invoke the continuing violations doctrine. *Cowell v. Palmer Township*, 263 F.3d 286, 293 (3d Cir. 2001). Here, Miller alleges unlawful acts by Osauski only on March 26, 2021. There is no allegation that Miller committed any unlawful acts during the limitations period. The continuing violations doctrine accordingly does not apply.

As for Miller's argument that the limitations period should be equitably tolled, equitable tolling "pauses the running of, or tolls, a statute of limitations when a litigant has pursued his rights diligently but some extraordinary circumstance prevents him from bringing a timely action." *Arellano v. McDonough*, 598 U.S. 1, 6 (2023).

In this case, Miller seeks equitable tolling based on his reliance on communications from an attorney that led him to believe the attorney might begin representing him and file suit on his behalf. (Doc. 27 at 4). Although there are "narrow circumstances in which the misbehavior of an attorney may merit" equitable tolling of a limitations period, *Seitzinger v. Reading Hosp. &*

*med. Ctr.*, 165 F.3d 236, 239 (3d Cir. 1999), Miller has not provided a sufficient factual basis to conclude that equitable tolling is warranted. He asserts that he first contacted an attorney on April 21, 2021, who purportedly told Miller that he "wanted [his] case," but then did not hear anything from the attorney until he eventually realized that the attorney "was trying to help the county." (*Id.*) Miller does not provide any documentation of communications with this attorney, the dates on which the communications occurred, or any information as to how the communications from the attorney prevented him from timely filing his claim against Osauski. Absent additional factual detail, the court cannot conclude that equitable tolling of the limitations period is warranted. The court will accordingly dismiss the claim as untimely without prejudice to Miller's right to file an amended complaint that provides additional allegations regarding his request for equitable tolling.

### E. Miller Fails to State a Claim Against Nye and Burns

Miller asserts claims against defendants Nye and Burns for violation of his rights under the First, Eighth, and Fourteenth Amendments. (Doc. 1 at 9). Defendants argue the claims fail because Miller fails to allege Nye and Burns's personal involvement and fails to allege the necessary elements for these claims. (Doc. 21 at 4-8).

The court agrees that Miller's complaint fails to state a claim upon which relief may be granted against Nye and Burns. The only specific factual allegations against Nye and Burns are that they interfered with Miller's ability to file grievances. This is insufficient to state a claim for violation of Miller's constitutional rights because prisoners do not have a constitutional right to a prison grievance process. *See, e.g.*, *Harris v. Wetzel*, 822 F. App'x 128, 130 (3d Cir. 2020); *Rieco v. Moran*, 633 F. App'x 76, 79 (3d Cir. 2015); *Davis v. Samuels*, 608 F. App'x 46, 49 (3d Cir. 2015). Thus, alleged denial of a grievance process is not a cognizable civil rights claim. *Id.*

To the extent Miller attempts to advance any other claims against Nye and Burns, he fails to allege their personal involvement. A defendant cannot be liable for a violation of a plaintiff's civil rights unless the defendant was personally involved in the violation. *Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 289 (3d Cir. 2018). The defendant's personal involvement cannot be based solely on a theory of *respondeat superior*. *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). Rather, for a supervisor to be liable for the actions of a subordinate, there must be allegations of personal direction or actual knowledge and acquiescence. *Id.* Miller does not make any specific allegations of Nye and Burns's personal involvement except for the allegations that they interfered with his ability to file grievances. Thus, it

17

appears that Miller is attempting to hold them liable solely based on their supervisory roles in the prison as warden and deputy warden, which is not a sufficient basis to allege personal involvement. *Rode*, 845 F.2d at 1207. The court will accordingly dismiss the claims against Nye and Burns for failure to state a claim upon which relief may be granted.

### F.     Leave to Amend

Before dismissing a civil rights complaint for failure to state a claim upon which relief may be granted, a district court must permit a curative amendment unless the amendment would be inequitable or futile. *Phillips v. Cty. of Allegheny*, 515 F.3d at 245. The court finds that amendment would be futile with respect to Miller's claims against defendant Knecht because those claims are barred by judicial immunity. The court cannot conclude, however, that amendment would be inequitable or futile with respect to the claims against Osauski, Nye, or Burns, and the court will therefore grant leave to amend with respect to the claims against those defendants.

### G.     Motion for Preliminary Injunction

A party moving for a preliminary injunction must show that (1) he is likely to succeed on the merits of his claims; (2) he would suffer irreparable harm if preliminary injunctive relief were not granted; (3) the harm he would suffer is not outweighed by the harm the nonmovants would suffer as a result

of the preliminary injunction; and (4) public interest weighs in favor of granting preliminary injunctive relief. *Ramirez v. Collier*, 595 U.S. 411, 421 (2022). Here, given that Miller's complaint fails to state a claim upon which relief may be granted, the court concludes that Miller has not shown a sufficient likelihood of success on the merits to obtain preliminary injunctive relief. The court will deny the motion on that basis.

### H.    Discovery Motions

Defendants' motion to stay discovery seeks to stay discovery pending the resolution of the motions to dismiss because the motions may result in dismissal of the entire action. (Doc. 22). Although the court has now resolved the motions to dismiss and has granted Miller leave to amend his claims against Osauski, Nye, and Burns, an amended complaint may still be subject to dismissal if Miller fails to allege sufficient facts to equitably toll the limitations period with respect to his claim against Osauski or fails to allege the personal involvement of Nye or Burns. Accordingly, the court will grant the motion to stay and stay discovery until the close of pleadings. Miller's motion to compel discovery (Doc. 57) will be denied as moot in light of the court's decision to stay discovery.

## I.      Sanctions

Finally, the court will consider defendants' motion for sanctions. (Doc. 44). Defendants seek to sanction Miller for purportedly instructing his family and friends to deposit money on the accounts of other inmates rather than his own to avoid money being deducted from his account for payment of the filing fee in this case. (*Id.*) Defendants acknowledge that there is no case law addressing a situation where a prisoner plaintiff diverts funds from his account to avoid payment of a filing fee. (*Id.*) Miller asserts that only one person deposited money on another inmate's account on his behalf and that this was done because he owed money to the other inmates and not to avoid payment of the filing fee. (Doc. 47 at 2).

Given the lack of case law on this issue and the parties' differing accounts on the pertinent facts, the court will deny the motion for sanctions without prejudice. Miller is warned, however, that if future proceedings demonstrate that he is diverting money from his account to avoid payment of the filing fee in this case, the court may impose sanctions, which may include revocation of his *in forma pauperis* status, dismissal of this action with prejudice, or any other appropriate sanctions.

## IV.    CONCLUSION

For the foregoing reasons, the court will grant defendants' motions to dismiss, dismiss the claims against defendant Knecht with prejudice, dismiss the claims against defendants Osauski, Nye, and Burns without prejudice, grant plaintiff leave to file an amended complaint against Osauski, Nye, and Burns, deny plaintiff's motion for preliminary injunction, grant defendants' motion to stay discovery, deny plaintiff's motion to compel discovery as moot, and deny defendants' motion for sanctions without prejudice. An appropriate order shall issue.


*s/ Malachy E. Mannion*
**Malachy E. Mannion**
**United States District Judge**

**Dated: July 22, 2024**
23-1165-01

21